[No. F006573. Fifth Dist. Mar. 29, 1988.]

BARBARA J. INABNIT, a Minor, etc., et al., Plaintiffs and Appellants, v.
RICHARD P. BERKSON, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I through III.

**COUNSEL**

Fielder & Fielder, Scott J. Fielder and Hugh B. Fielder for Plaintiffs and Appellants.

Borton, Petrini & Conron, George F. Martin and J. David Petrie for Defendant and Respondent.

**OPINION**

**HAMLIN, J.**—Plaintiffs Barbara J. Inabnit, a minor, by and through her guardian ad litem Mary Jaynes, Mary Jaynes, Jenny Gonzales, Charles O. Inabnit, Jr., Donald L. Inabnit, and Mildred Inabnit appeal from the summary judgment in favor of defendant Richard P. Berkson, M.D., and against them in their action for damages resulting from defendant's unauthorized and negligent disclosure of the medical records of plaintiffs Barbara Inabnit and her mother, Mary Jaynes.

This appeal presents for our review one aspect of the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.) (the Act). The issue before us is whether a licensed physician may release his records pertaining to psychiatric treatment furnished a patient without that patient's authorization when the production of those records is compelled by a subpoena

duces tecum issued in a judicial proceeding in which the physician is not a party. We conclude that such release is proper when copies of the subpoena and affidavit, accompanied by the notice to the patient or the patient's attorney, have been served, as in this case, in accordance with Code of Civil Procedure section 1985.3. We will affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On September 27, 1984, plaintiffs filed a complaint against Richard P. Berkson, M.D., alleging that sometime in 1983 defendant, a psychiatrist, had been engaged by Mary Jaynes to treat her daughter, Barbara J. Inabnit, for depression occasioned by the loss of Barbara's father and for the associated anxieties. As part of his professional services, defendant also interviewed and counseled Mary Jaynes and was treating her as well as her daughter. The complaint alleged that at the time of the treatment plaintiffs herein were plaintiffs in another lawsuit in the same court for the wrongful death of Barbara Inabnit's father (wrongful death action). The complaint further alleged that defendant, with knowledge of the pending wrongful death action, in early 1984 negligently released to the attorney for one of the defendants in that action certain private, confidential and privileged interview notes (medical records) having to do with his counseling sessions with plaintiffs Barbara Inabnit and Mary Jaynes. Such negligent release of the medical records allegedly caused plaintiffs' wrongful death cause of action to diminish in value in an amount not yet ascertained.

Defendant answered plaintiffs' complaint, alleging that his disclosure of the medical records was lawful and pursuant to a subpoena duces tecum issued and served pursuant to Code of Civil Procedure section 1985.3. He raised several affirmative defenses, including the bar of Civil Code section 56.10, subdivision (b)(3),[1] consent and estoppel.

Defendant moved for summary judgment on the basis that section 56.10, subdivision (b)(3), provides an exception to the psychotherapist-patient privilege, that he released the medical records pursuant to a subpoena duces tecum as that provision contemplates when the requirements of Code of Civil Procedure section 1985.3[2] have been satisfied. Thus defendant

---

[1] At all times pertinent to this action, Civil Code section 56.10, subdivision (b)(3) provided: "(b) A provider of health care shall disclose medical information if the disclosure is compelled by any of the following: [¶] . . . [¶] (3) By a party to a proceeding before a court or administrative agency pursuant to a subpoena, subpoena duces tecum, notice to appear served pursuant to Section 1987 of the Code of Civil Procedure, or any provision authorizing discovery in a proceeding before a court or administrative agency."

Further references to section 56.10 and its subdivisions are to Civil Code section 56.10 and its subdivisions.

[2] In 1983 and 1984 Code of Civil Procedure section 1985.3 provided in pertinent part: "(a) For purposes of this section, the following definitions apply: [¶] (1) 'Personal records' means

contends he did not breach any duty toward plaintiffs that would support any of the causes of action alleged in plaintiffs' complaint.

In support of his motion for summary judgment, defendant submitted a declaration that he was informed and believed that a subpoena duces tecum was served on his office on December 29, 1983, and that the copying of plaintiffs' medical records was done pursuant to that subpoena duces tecum. Defendant later filed a supplementary declaration that amended his previous declaration by changing the date on which the subpoenaed documents were copied from December 29, 1983, to January 10, 1984. In the latter declaration, defendant declares that, "The records which I produced for copying on January 10, 1984, were being produced in response to a subpoena duces tecum . . . ."

---

the original or any copy of books, documents or other writings pertaining to a consumer and which are maintained by any 'witness' which is a physician, . . . [¶] (2) 'Consumer' means any individual . . . which has . . . used the services of such witness . . . . [¶] (3) 'Subpoenaing party' means the person or persons causing a subpoena duces tecum to be issued or served in connection with any civil action or proceeding pursuant to this code, . . . [¶] (b) The date specified in a subpoena duces tecum for the production of personal records shall not be less than 15 days from the date the subpoena is issued. Prior to the date called for in the subpoena duces tecum for the production of personal records, the subpoenaing party shall serve or cause to be served on the consumer whose records are being sought a copy of the subpoena duces tecum, of the affidavit supporting the issuance of the subpoena, and of the notice described in subdivision (e). Such service shall be made both: [¶] (1) To the consumer personally, or at his or her last known address, . . . or, if he or she is a party, to his or her attorney of record. [¶] (2) Not less than 10 days prior to the date for production specified in the subpoena duces tecum, plus the additional time provided by Section 1013 if service is by mail. [¶] (c) Prior to the production of the records, the subpoenaing party shall do either of the following: [¶] (1) Serve or cause to be served upon the witness a proof of personal service or of service by mail attesting to compliance with subdivision (b). [¶] (2) Furnish the witness a written authorization to release the records signed by the consumer or by his or her attorney of record. The witness may presume that any attorney purporting to sign such authorization on behalf of the consumer acted with the consent of the consumer. [¶] . . . [¶] (e) Every copy of the subpoena duces tecum and affidavit served on a consumer or his or her attorney in accordance with subdivision (b) shall be accompanied by a notice, in a typeface designed to call attention to the notice, indicating that (1) records about the consumer are being sought from the witness named on the subpoena; (2) if the consumer objects to the witness furnishing the records to the party seeking the records, the consumer must file papers with the court prior to the date specified for production on the subpoena; and (3) if the party who is seeking the records will not agree in writing to cancel or limit the subpoena, an attorney should be consulted about the consumer's interest in protecting his or her rights of privacy. If a notice of taking of deposition is also served, that other notice may be set forth in a single document with the notice required by this subdivision. [¶] (f) Any consumer whose personal records are sought by a subpoena duces tecum may, prior to the date for production, bring a motion under Section 1987.1 to quash or modify the subpoena duces tecum. Notice of the bringing of that motion shall be given to the witness prior to production. No witness shall be required to produce personal records after receipt of notice that such a motion has been brought, except upon order of the court in which the action is pending or by agreement of the parties, witnesses, and consumers affected."

Further references to section 1985.3 and its subdivisions are to Code of Civil Procedure section 1985.3 and its subdivisions as they read in 1984.

Along with a memorandum of points and authorities in opposition to the motion for summary judgment, plaintiffs filed on October 17, 1985, the declaration of Hugh B. Fielder, an attorney for plaintiffs both in the underlying wrongful death action and in the negligence action. On the preceding day, plaintiffs' attorney had filed a demand that the original transcript of defendant's April 11, 1985, deposition be lodged with the trial court. Fielder admitted he had designated defendant as an expert witness in the wrongful death action, and that he had been served with a copy of the subpoena of defendant's medical records in accordance with section 1985.3. Copies of several pages of defendant's deposition were attached, raising the question whether at the time he allowed his medical records to be copied defendant had been aware that there was a subpoena for them. The declaration of Mary Jaynes was also filed on October 17, 1985, setting forth that she had never given defendant permission to release the documents.

On December 16, 1985, the trial court ruled on defendant's motion for summary judgment, stating in part: "I am persuaded that the provisions of Civil Code, section 56.10, is [sic] specific and unequivocal in requiring a health care provider to disclose medical information if the disclosure is compelled pursuant to a subpoena duces tecum. The statute makes an express exception to the provision requiring an authorization from the patient. [¶] I find, therefore, that defendant's conduct cannot be the basis for any liability to plaintiffs and the defendant is entitled to summary judgment in his favor. [¶] Defendant's motion is granted." An order granting summary judgment and summary judgment for defendant were filed on December 19, 1985.

On December 31, 1985, plaintiffs filed a document entitled "Notice of Appeal of Ruling on Summary Judgment." The ruling on the summary judgment is not appealable. However, the body of plaintiffs' notice recites that the ruling was entered on or about December 19, 1985, the date upon which the judgment was filed. Since the notice of appeal was timely as to the judgment and the parties have fully briefed the issues on appeal without objection, we elect to treat this as an appeal from the judgment that followed the ruling on summary judgment.

I.-III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

*See footnote, *ante,* page 1230.

IV.

*Waiver of the Psychotherapist-patient Privilege*

■ Defendant contends that as a matter of law under section 56.10, subdivision (b)(3), he, as a licensed physician practicing psychiatry, was not required to assert the psychotherapist-patient privilege before turning over his records pursuant to a subpoena duces tecum issued in the wrongful death judicial proceeding.

First, defendant points out that as a licensed physician he is, by definition in then effective Civil Code section 56.05, subdivision (d), a provider of health care within the meaning of section 56.10.

Second, the medical records that were released by defendant's employees constituted "medical information regarding a patient of the provider."

Section 56.10 in the very first subdivision (a) recognizes the equivalent of a psychotherapist-patient privilege when it states: "No provider of health care shall disclose medical information regarding a patient of the provider without first obtaining an authorization, except as provided in subdivision (b) or (c)." Thus section 56.10 does not purport to modify or conflict with the psychotherapist-patient privilege established by Evidence Code section 1014 before section 56.10 was originally enacted in 1981. Instead, section 56.10 specifies two carefully crafted exceptions to the requirement of patient authorization. The exception with which we are concerned, subdivision (b)(3), provides: "(b) A provider of health care shall disclose medical information if the disclosure is compelled by any of the following:

". . . . . . . . . . . . . . . . . .

"(3) By a party to a proceeding before a court or administrative agency pursuant to a subpoena, subpoena duces tecum, notice to appear served pursuant to Section 1987 of the Code of Civil Procedure, or any provision authorizing discovery in a proceeding before a court or administrative agency." Section 1985.3 governs the procedure for serving a subpoena duces tecum of personal records of one who has used the services of a "witness" who was a physician.

The first requirement of section 1985.3 for the issuance of a subpoena duces tecum of the personal records of a consumer is that the subpoenaing party serve a copy of the subpoena duces tecum on the consumer *or* his attorney. The details of this requirement are stated in subdivision (b)(1) set forth in footnote 2 above.

Here, the subpoenaing party complied with the requirements of section 1985.3, subdivision (b)(1), by serving plaintiffs' attorneys with a copy of the subpoena duces tecum, the affidavit in support of its issuance, and the notice specified in subdivision (e).

The production of the records was to have taken place on December 29, 1983. The required documents were served on plaintiffs' attorneys on December 14, 1983, which complies with the 10 days plus 5 days for mailing notice requirement of subdivision (b)(2).

The second requirement of section 1985.3 is that the witness be provided with a proof of service indicating that the consumer has been advised of the issuance of the subpoena duces tecum. This requirement, set forth in subdivision (c)(1), was also satisfied.

The final requirement for the subpoenaing party (stated in subd. (e)) is that such party notify the consumer (1) that his or her records are being sought from the witness, (2) that the consumer has a right to object, and (3) that the consumer has the right to seek the services of an attorney in order to protect his rights of privacy.

Similarly, this requirement was met. A notice of taking deposition was served upon plaintiffs' attorneys by the subpoenaing party. Paragraph No. 3 of the notice of taking deposition specifically complies with the exact notice requirements of subdivision (e).

Section 1985.3 not only sets forth the requirements to be satisfied by the subpoenaing party but it also specifies in subdivision (f) what the consumers, such as plaintiffs in this case, can do if they object to the production of their personal records pursuant to the subpoena. Plaintiffs simply did nothing to protect against defendant's production of his records pertaining to his psychiatric treatment of plaintiffs.

Plaintiffs attempt to excuse their failure to protect against defendant's production of his records by pointing out that records maintained by *psychotherapists* were not controlled by section 1985.3 until that specific category was added to the list of witnesses in subdivision (a)(1) of that section in 1986 (Stats. 1986, ch. 605, § 1, p. 226). They contend there could have been no legislative purpose in such a specific addition to the list of witnesses if psychotherapists were already covered. As applied to this case, plaintiffs' argument is flawed. Since the 1986 amendment adds "psychotherapist, as

defined in Section 1010 of the Evidence Code,"[3] an examination of that definition leaves little doubt that the 1986 amendment was intended to add many to those already embraced within the category of providers of health care as defined in Civil Code section 56.05. Only subdivision (a) of Evidence Code section 1010 mentions persons who practice psychiatry, and that mention appears to have been made to provide a description of another addition: "(a) A person authorized, or reasonably believed by the patient to be authorized, to practice medicine in any state or nation who devotes, or is reasonably believed by the patient to devote, a substantial portion of his or her time to the practice of psychiatry." More significantly, by including all psychotherapists, as defined in Evidence Code section 1010, as health providers, the 1986 amendment added to those covered by section 1985.3, licensed psychologists, clinical social workers, school psychologists with a credential, and marriage, family and child counselors. Their addition was a significant legislative purpose for the 1986 amendment.

Plaintiffs then assert that defendant's production of records was not compelled by section 1985.3 before the above-mentioned amendment to that section in 1986 simply because he was both a physician and a psychiatrist. They contend that defendant was excluded from the coverage of section 1985.3 in 1983 and 1984 because he treated plaintiffs in his capacity as a psychotherapist and only psychotherapeutic records were requested and obtained. According to plaintiffs, that makes a difference because the Legislature has granted to patients of psychiatrists a privilege much broader in scope than the ordinary physician-patient privilege. We disagree. That the privilege for psychiatric communications and records is broader in scope than the physician-patient privilege does not suggest that section 1985.3 in referring to the records maintained by a physician meant anything other than all the records of a physician without regard to his specialty. Certainly it is reasonable to believe the Legislature meant from the date it originally enacted section 1985.3 in 1980 that the subpoenaing of *any* records of *any* physician should trigger a duty on the subpoenaing party to give notice to the consumer before requiring the production of those records.

---

[3] In 1986 Evidence Code section 1010 provided: "As used in this article, 'psychotherapist' means: [¶] (a) A person authorized, or reasonably believed by the patient to be authorized, to practice medicine in any state or nation who devotes, or is reasonably believed by the patient to devote, a substantial portion of his or her time to the practice of psychiatry. [¶] (b) A person licensed as a psychologist under Chapter 6.6 (commencing with Section 2900) of Division 2 of the Business and Professions Code. [¶] (c) A person licensed as a clinical social worker under Article 4 (commencing with Section 9040) of Chapter 17 of Division 3 of the Business and Professions Code, when he or she is engaged in applied psychotherapy of a nonmedical nature. [¶] (d) A person who is serving as a school psychologist and holds a credential authorizing such service issued by the state. [¶] (e) A person licensed as a marriage, family and child counselor under Chapter 13 (commencing with Section 4980) of Division 2 of the Business and Professions Code."

Section 56.10, subdivision (b)(3), a part of the Act, states that a provider of health care such as defendant *shall* disclose medical information about a patient he has treated if the disclosure is compelled by a party to a proceeding before a court pursuant to a subpoena duces tecum. The Act was enacted with full knowledge of the existence of the psychotherapist-patient privilege provided by Evidence Code section 1014. In fact, Civil Code section 56.28, a part of the Act, states that nothing in the Act shall be deemed to affect existing laws relating to privileges established under the Evidence Code.

This general limitation stated in section 56.28 requires us to consider the provisions of the Evidence Code relating to the psychotherapist-patient privilege before deciding the effect of section 56.10 in this case.

Evidence Code section 1014 provides in relevant part: "Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by:

"(a) The holder of the privilege [the patient, or in the case of Barbara J. Inabnit, a minor, her guardian under the provisions of Evidence Code section 1013];

"(b) A person who is authorized to claim the privilege by the holder of the privilege; or

"(c) The person who was the psychotherapist at the time of the confidential communication, . . ."

Under the provisions of Evidence Code section 1015, the psychotherapist who received or made a communication subject to the privilege is required to claim the privilege whenever he is present when the communication is sought to be disclosed. However, the privilege established by Evidence Code section 1014 is, by the express provisions of that section, subject to section 912 of that code, which provides for waiver of the privilege with respect to a communication protected by such privilege if the holder of the privilege has consented to such disclosure. The same section provides that consent to disclosure may be manifested by conduct of the holder of the privilege indicating consent to disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege. (Evid. Code, § 912, subd. (a).)

Here, plaintiffs, through their attorneys, received notice pursuant to section 1985.3 that defendant's records of treatment of plaintiffs were being

sought in the wrongful death action and of what they could do to protect against unwanted disclosure. In this circumstance, plaintiffs' failure to take any action whatsoever to claim the psychotherapist-patient privilege constituted a waiver of the privilege within the meaning of Evidence Code section 912, subdivision (a). Such waiver left defendant in the position of being compelled under the provisions of section 56.10, subdivision (b)(3), to disclose his medical records.

We believe the conclusion we have reached in no way threatens or interferes with the intended purpose of the psychotherapist-patient privilege: to encourage "the fullest revelation of the most intimate and embarrassing details of the patient's life." (See legis. committee com., 29B West's Ann. Evid. Code (1966 ed.) § 1014, p. 621, Deerings Ann. Evid. Code (1986 ed.) p. 194.) We merely recognize that compliance with the notice requirements of section 1985.3 sets the stage for a waiver of the privilege by the failure of the holder (or one authorized to act for the holder) to act in any reasonable way to claim the privilege.

We note that the Act has not yet been interpreted by an appellate court in conjunction with section 1985.3. It is far from clear how the Legislature intended these statutes to relate one to the other. The Legislature will, we are confident, act promptly to provide further clarification if we have not discerned its true purpose and intent in enacting these two statutes.

Since defendant's production of plaintiffs' medical records was compelled by the subpoena duces tecum served upon him, defendant breached no duty to plaintiffs. The trial court did not err in granting summary judgment in favor of defendant and against plaintiffs.

The judgment is affirmed and defendant is awarded his costs on appeal against plaintiffs.

Woolpert, Acting P. J., and Pettitt, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied June 22, 1988.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.