Filed 9/16/16  D.P. v. L.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| D.P., <br><br> Appellant, <br><br> v. <br><br> L.A., <br><br> Respondent. | D068978 <br><br> (Super. Ct. No. D496034) |


APPEAL from orders of the Superior Court of San Diego County, Gerald C. Jessop, Judge.  Reversed in part, affirmed in part and remanded with instructions.


Law Office of Dawn Dell'Acqua and Dawn M. Dell'Acqua for Appellant.

No appearance by Respondent.

D.P. (Father) appeals from two orders concerning a conjoint therapist appointed by the court in a long-standing custody dispute between Father and L.A. (Mother), the mother of his two children.  Father argues the court erred by:  (1) determining there was no psychotherapist-patient privilege between the children and the conjoint therapist; (2) failing to remove the conjoint therapist from the case; (3) restricting the testimony of the

children's individual therapist regarding the conduct of the conjoint therapist; and (4) sanctioning Father for failing to comply with the court's prior orders regarding conjoint therapy. We conclude the court erred in determining that there is no psychotherapist-patient privilege between the conjoint therapist and the children, but that Father waived the privilege on behalf of the children in a limited manner with respect to the conduct of the conjoint therapist during certain therapy sessions. We affirm the remaining orders.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from two orders addressing competing requests for orders filed by Mother and Father in a long-standing custody dispute. The record on appeal includes two requests for orders filed by Mother and one request for orders filed by Father, various pleadings and declarations in support of the requests, the transcripts of two hearings addressing the requests, and the written orders issued following the two hearings. The record also includes three prior orders from two other judges addressing custody, visitation and conjoint therapy, and a detailed Family Court Services (FCS) mediation report. The record does not include all of the court's prior orders on custody and visitation or the transcripts of hearings, requests for orders, or associated pleadings related to prior orders addressing custody, visitation, or conjoint therapy. We base our factual summary on the record before us in this appeal. (See, e.g., *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.)

Mother and Father were never married but had two children together. After their relationship ended in 2006, a dispute arose regarding custody and Mother and Father attended an FCS mediation session. Following mediation, FCS recommended Mother

2

and Father share legal and physical custody of the children with Mother providing the children's primary residence. Mother and Father returned for a second FCS mediation and the mediator recommended they share physical custody of the children evenly.[1] In 2009, the court granted Father primary physical custody of the children with Mother retaining parenting time on alternating weekends and one evening a week. At some point thereafter Father filed an ex parte motion alleging Mother sexually abused the children and, in late December 2010, the court issued an order precluding Mother from having contact with the children, at least temporarily, and referred Mother and Father to FCS for a third mediation.

The mediation occurred a few days later and the mediator's report indicates Child Welfare Services (the Agency) and law enforcement were involved due to the children's disclosure of abuse and Father stated the Agency had instructed him to file the request for the no-contact order against Mother. Accordingly, the FCS mediator spoke with the Agency several times over the next several months. The Agency worker informed the mediator the children had made consistent statements about the alleged abuse but Mother had denied the allegations, "passed" a polygraph test regarding the alleged abuse, and consistently asserted Father was manipulating the children into making false allegations. Ultimately, the Agency closed the referral as inconclusive, concluding it was unclear if there was actual abuse as opposed to issues surrounding Mother's parenting or understanding of appropriate boundaries, and it was possible Father had coached or

---

[1]     The record indicates the second mediation occurred in October 2010 but it appears this may be a typographical error given the timing of the abuse allegations and the 2009 custody orders.

3

manipulated the children. Because Father had primary physical custody of the children, the Agency did not open a case for services. The Agency emphasized the children needed counseling but was "comfortable" with Mother having professional or therapeutically supervised contact with them.

In its report to the court dated March 28, 2011, FCS indicated Mother needed individual therapy, the children each needed individual therapy, and "the mother's contact with the children [should] be limited to therapeutic contact with a third therapist, to act in the role of conjoint therapist by guiding the mother's reintroduction to the children." The report concluded with formal recommendations to the court, including that the court award sole legal custody of the children to Father, with Mother retaining access to their medical and school records. FCS also recommended the court award Mother "therapeutically supervised visitation with the children up to four hours each week" and award Father all other parenting time.

Finally, as relevant here, FCS recommended the court order Mother and the children to each participate in individual counseling, Mother and the children to "participate in conjoint counseling with a licensed mental health practitioner or agency," and both Mother and Father to "cooperate and participate in the conjoint children's therapy at the discretion of the therapist." The recommendations specified the issues to be addressed in therapy included reestablishing the relationship between Mother and the children, sexual abuse, trauma, separation, healthy boundaries and relationships, and coping skills. The court (Judge Huguenor) adopted these recommendations, along with others not relevant here.

4

A year later, the same FCS mediator submitted a revised set of recommendations.[2] FCS again recommended the court award sole legal custody to Father, with Mother retaining the right to access medical and school records, and the children to remain primarily under Father's care. But in this report, FCS recommended Mother's parenting time be therapeutically supervised "if and when the conjoint therapist feels the children are ready for such contact." FCS also recommended Mother and both children participate in individual counseling, and "mother and children shall participate in conjoint counseling with Lori Pele, LCSW, if and when the conjoint therapist believes that the mother and children are ready for such contact." In July 2012, Judge Huguenor adopted these recommendations as the court's order.

Two years later in April 2014, Mother filed a request for order and a declaration in support of the request. In the declaration,[3] Mother alleged Pele had been unresponsive and, as a result of Pele's delays, conjoint therapy had not begun despite the children being ready and Mother had not had any contact with the children in over three years. Mother also informed the court she had requested therapy records from Pele but did not receive them for over two months (and only after she filed a complaint against Pele) and that Pele had agreed to withdraw as the conjoint therapist. Mother therefore asked the court to replace Pele with Marc J. Davidoff, Psy.D., whom her individual therapist had

---

[2]    The record does not indicate what prompted this mediation and does not include a report of what occurred during the mediation.

[3]    The record on appeal includes Mother's declaration in support of the request for order, but does not include the request for order itself or any associated briefing.

5

recommended. Mother also alleged Father was not complying with the court's previous orders that he provide her information and access to the children's medical and school records. After a hearing, the court (Judge Parker) granted Mother's request and appointed Dr. Davidoff as the new conjoint therapist, replacing Pele.[4]

Judge Parker's May 2014 order states, in part:

"1. The Court appoints Dr. Mark Davidoff as the new conjoint therapist in this matter replacing Lori Pele.

"2. Dr. Davidoff shall determine whether the minor children and [Mother] are ready to commence conjoint therapy with each other.

"3. The Court does not order commencement of supervised visitation between [Mother] and the minor children, but rather leaves the decision to commence supervised visitation to Dr. Davidoff.

"4. The children's therapist, Judith Hahn, [LCSW,] may consult with Dr. Davidoff and inform him of whether she believes the minor children are ready for the commencement of conjoint therapy. Dr. Davidoff, however, shall make the decision as to whether conjoint therapy may begin."

The order also required all parties to sign releases to ensure Dr. Davidoff could obtain all necessary information from Pele, Hahn, and Mother's individual therapist. Finally, the order required Father to keep Mother informed regarding the children's schools, doctors, and extracurricular activities and to inform the children's school and doctors that Mother was entitled to request and receive information regarding the children.

Thereafter, Dr. Davidoff met with Father, both children, and Mother individually, and conducted three joint sessions between Mother and the younger child. The older

---

[4] It does not appear as though the parties participated in mediation in connection with this request for orders.

child was not yet ready for conjoint therapy with Mother. During the third conjoint session with Mother and the younger child in September 2014, Dr. Davidoff allowed the child's maternal grandmother to enter the room. A few days later, Father e-mailed Dr. Davidoff complaining about the visit and copied Mother's attorney. In the e-mail Father asserted Dr. Davidoff had not informed him or asked his permission before allowing the maternal grandmother to join the last session, the younger child was "crying, upset, and confused" after the session, and neither of the children wanted to continue therapy with Dr. Davidoff. Father stated he was aware of the court's orders but intended to respect the decisions of his children.

Mother had no further contact with the children following Father's e-mail. In early January 2015, Mother filed a request for orders asking the court to compel Father to obey the prior orders regarding conjoint therapy, including a previous order that Father pay half the associated costs, and seeking sanctions for Father's refusal to do so. Mother also asked the court to waive the psychotherapist-patient privilege between Dr. Davidoff and the children, or to rule Father waived the privilege by copying Mother's counsel on his e-mail to Dr. Davidoff. Mother argued waiver was necessary so Dr. Davidoff could properly respond to Father's allegations and so the court could have all information necessary to protect the best interests of the children. Mother and her attorney filed declarations supporting the request for orders and Mother's declaration attached a copy of the e-mail Father had sent to Dr. Davidoff and copies of the court's previous orders concerning custody and conjoint therapy.

Later that same month, Father filed his own request for orders seeking reappointment of minors' counsel and asking the court to remove Dr. Davidoff as the conjoint therapist. Father's briefing focused primarily on the request to appoint minors' counsel. However, Father also filed a declaration including allegations Dr. Davidoff never spoke with Pele or Hahn and never sought his approval before bringing the grandmother into the session. Father stated the children's therapist, Hahn, was not happy that Dr. Davidoff had done so and, as a result, the children refused to return to therapy with Dr. Davidoff. Shortly thereafter, Mother filed a declaration from Dr. Davidoff in which he asserted Father had persistently resisted conjoint therapy between the children and Mother and now refused to bring the children to any further sessions. The declaration did not include any details regarding the therapy sessions Dr. Davidoff had conducted.

In late March 2015, Mother filed a subsequent request for an order stating "the psychotherapist-patient privilege does not operate to either shield from disclosure, or to bar admission in evidence, any communications between the [children] and Dr. . . . Davidoff relevant to what has transpired in conjoint therapy sessions nor any communications between the [children] and any therapist relevant to the purported factual basis for the allegation of sex abuse against [Mother]." Both Mother and Dr. Davidoff filed additional declarations in support of the request. Dr. Davidoff stated he was prepared to testify in greater detail about what occurred in his therapy sessions with the children should the court order the privilege did not bar such disclosure, but again did not provide any details regarding any of the sessions he had conducted.

8

Mother and Father each filed an opposition to the other's requests for orders and Mother filed additional supporting declarations from herself and Dr. Davidoff. In this third declaration, Dr. Davidoff again stated he was prepared to testify in greater detail regarding what had transpired during therapy if the court allowed it, but also disputed particular statements Father had made in his moving papers regarding his approach and the sessions he had conducted. Also in response to Father's allegations, Dr. Davidoff explained why he did not contact Pele. Finally, Dr. Davidoff asserted he was not aware of any order precluding him from including the grandmother in a session if he thought doing so would be therapeutic.

Mother also filed a reply to Father's opposition alleging that Father had continually tendered the issues of Dr. Davidoff's conduct during therapy sessions and the allegations of sexual abuse. Mother also asserted the court appointed Pele, and subsequently Dr. Davidoff, to examine the children such that their communications during sessions were not privileged in accordance with Evidence Code section 1017, subdivision (a).

The court (Judge Jessop) scheduled two hearings in response to the competing requests for orders. The first hearing, set for April 14, 2015, was to address Father's request for appointment of minors' counsel and Mother's request to waive the psychotherapist-patient privilege with respect to Dr. Davidoff. The second hearing was to address Father's request for orders removing Dr. Davidoff as the conjoint therapist and Mother's request for sanctions.

The day before the first hearing, Mother submitted a declaration from her attorney and a declaration from Dr. Davidoff (in lieu of personal testimony) in support of her

9

request for orders. In his declaration, Dr. Davidoff asserted Father had not been paying his share for the therapy sessions and described in detail his difficulty in obtaining Father's cooperation with scheduling therapy sessions. Dr. Davidoff also discussed the final conjoint therapy session, explaining the child had been comfortable with Mother during the session, had discussed other family members and expressed a desire to see them again and, based on the child's response when asked about seeing the grandmother, Dr. Davidoff had allowed the grandmother to enter and participate in the session for approximately 15 minutes. Dr. Davidoff opined the session was therapeutic and no one involved was upset, and that he was ready and willing to testify more fully as to the basis for those opinions. Finally, Dr. Davidoff recommended each of the children, Mother, and Father continue with individual therapy with him and the younger child and Mother continue with conjoint therapy with him.

At the start of the first hearing, the court noted it had reviewed large portions of the file in preparation for the hearing. The court commented it was not clear what the function of a "conjoint therapist" was and that it was the court's view that Dr. Davidoff was appointed as a "recommender," someone who recommended to the court when to commence visitation. The court noted the parties signed waivers so Dr. Davidoff could consult with the other therapist in making such a recommendation, that FCS would typically be presenting recommendations to the court regarding visitation and, in the court's view, Judge Parker appointed Dr. Davidoff to make such recommendations in place of FCS.

10

In response, Father argued the court appointed Dr. Davidoff as a conjoint therapist, and that a conjoint therapist is not a recommending counselor. Counsel emphasized the prior orders showed the court had appointed Dr. Davidoff for the purpose of counseling or therapy, and thus the privilege applied. The court rejected the argument and concluded Dr. Davidoff, as a "recommender," was not subject to the psychotherapist-patient privilege.

The court then addressed Mother's request that Hahn's communications with the children were not subject to the psychotherapist-patient privilege. The court noted she was a psychotherapist, the scope of her appointment did include treatment of the children, and the reason FCS recommended the children seek individual counseling was to help them cope with the circumstances surrounding the custody dispute. The court concluded Hahn's communications with the children were subject to the psychotherapist-patient privilege. At the conclusion of the hearing, the court expressed its hope the parties would try to engage in "Dr. Davidoff's conjoint therapy" and acknowledged Judge Parker's previous order appointing Dr. Davidoff as the conjoint therapist.

Before the second hearing, Mother filed a fifth, more detailed declaration from Dr. Davidoff. In this declaration, Dr. Davidoff provided greater detail regarding his individual therapy sessions with the children and his conjoint sessions with the younger child and Mother, including the final conjoint session in which the maternal grandmother was present.

At the second hearing, Father, on behalf of the children, waived the privilege with respect to Hahn. Mother objected to Hahn's testifying, arguing her testimony would be

11

hearsay as to what the children told her, and the children could instead testify directly as to their feelings about therapy with Dr. Davidoff. Father stated Hahn would testify regarding the children's progress in therapy, their statements regarding conjoint therapy, and her conversations with Dr. Davidoff. Mother continued to object on relevancy grounds.

The court allowed Hahn to testify but sustained a number of objections during questioning, effectively limiting her testimony to the request for her records, the children's nonverbal response to her questions regarding continued therapy with Dr. Davidoff, and her discussions with Dr. Davidoff regarding his conduct. At the conclusion of the hearing, the court denied Father's request to remove Dr. Davidoff. The court explained although the children may have a fear of going back to Dr. Davidoff, the record indicated otherwise, there had been a long history of Father frustrating the conjoint therapy by refusing to cooperate, it had been years since the abuse allegations surfaced with little progress towards reunification, and there was not sufficient evidence to remove Dr. Davidoff. The court also concluded sanctions were appropriate due to Father's lack of cooperation.

Ultimately, the court issued written orders regarding both hearings. The first order denied Father's request to reappoint minors' counsel and found Dr. Davidoff was not subject to the psychotherapist-patient privilege because his purpose was to advise the parents and the court how to proceed with visitation. The order explained Father's attempt to use the privilege to prevent the introduction of contrary evidence was

12

disingenuous and the court precluding Dr. Davidoff's testimony would impermissibly allow the privilege to be used as both a sword and a shield.

The second order denied Father's request to replace Dr. Davidoff and reiterated Dr. Davidoff was to take the lead in determining the appropriateness of conjoint therapy and the scheduling of the same. It also specified the children were to meet with Dr. Davidoff weekly. The order explained it was unclear why the children no longer wanted to participate in conjoint therapy with Dr. Davidoff and Father had not made an adequate showing of bias to disqualify Dr. Davidoff. Finally, the order awarded sanctions in the amount of $8,000 against Father under Family Code section 271 for failing to comply with the court's previous orders by not cooperating with Dr. Davidoff and the conjoint therapy process.

On appeal, Father disputes several aspects of both orders. Father argues the court erred in determining there was no psychotherapist-patient privilege with respect to Dr. Davidoff; the court should have removed Dr. Davidoff from the case; the court should have allowed Hahn to testify more fully; and the sanctions against him were not appropriate. Because Mother did not file a responsive brief, and Father waived oral argument, we decide this appeal based on the record and Father's opening brief. (Cal. Rules of Court, rule 17(a).)

## DISCUSSION

I.    *General Legal Principles Regarding Custody Disputes*

The County of San Diego is a recommending county with respect to custody and visitation disputes. (Super. Ct. San Diego County, Local Rules, rule 5.10.2.) Typically,

13

when a custody dispute arises, the court refers the parties to FCS for mediation. (*Ibid*.) If the parties do not reach an agreement during the FCS mediation, the FCS counselor will submit a comprehensive written report to the court, including custody and visitation recommendations. (*Ibid*.) Unless a party objects, the court will consider the entire FCS report and may use the report as a basis for its custody and visitation orders. (*Ibid*.) The parties may also stipulate to use a private counselor, rather than FCS mediation, at their own expense. (*Id*., rule 5.10.4.)

When a court awards primary physical custody to one parent, it must award reasonable visitation rights to the other parent unless such visitation would be detrimental to the best interests of the child. (Fam. Code, § 3100, subd. (a); *Camacho v. Camacho* (1985) 173 Cal.App.3d 214, 218.) Although the court has broad discretion in fashioning custody and visitation orders, parents have fundamental rights in the relationship with their children and the court should attempt to preserve some visitation where possible. (*Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 641; *Marriage of Birdsall* (1988) 197 Cal.App.3d 1024, 1028.) Supervised visitation is one available option when questions arise regarding the safety of the children in the care of the parent. If the court determines child abuse has occurred and supervision is therefore necessary, the court must also determine whether to require supervision by a professional or nonprofessional provider based on the best interests of the child. (Fam. Code, § 3200.5.)

II.     *Standard of Review*

We review orders relating to custody and visitation as well as orders relating to the admissibility of evidence, including the admissibility of communications subject to the

14

psychotherapist-patient privilege, for an abuse of discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4h 25, 32 (*Burgess*); *In re Cole C.* (2009) 174 Cal.App.4th 900, 911 (*Cole C.*).) We also review orders awarding sanctions under Family Code section 271 for an abuse of discretion, taking into account the restriction that the award may not constitute an unreasonable financial burden. (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1520 (*Robert J.*).) A court abuses its discretion only when its decision exceeds the bounds of reason. (*Cole C.*, at p. 911.)

III. *Analysis*

A. *Psychotherapist-Patient Privilege Applies but Father Waived Privilege*

Father argues the court erred by finding Dr. Davidoff was not subject to the psychotherapist privilege. For the reasons set forth more fully below, we agree but also conclude Father waived the privilege, in a limited manner, with respect to the conduct of Dr. Davidoff during the third conjoint therapy session, and the children's mental state in response thereto. Although the court viewed Dr. Davidoff as a "recommender," who would advise the court concerning the appropriateness of conjoint therapy and visitation, the court—both orally and in its written order—confirmed he was also acting as a psychotherapist with respect to the court-ordered therapy. As such, Dr. Davidoff's communications, during therapeutic sessions, with Mother, Father, and the children were, and remain, subject to the psychotherapist-patient privilege.

15

1.    *The Psychotherapist-Patient Privilege Applies to Communications Occurring During Therapeutic Sessions with Dr. Davidoff*

The psychotherapist-patient privilege allows a patient to refuse to disclose, and to prevent another from disclosing, confidential communications between the patient and a psychotherapist. (Evid. Code, § 1014; *Simek v. Superior Court* (1981) 117 Cal.App.3d 169, 173 (*Simek*).) Because effective psychotherapy often depends on the patient revealing intimate and embarrassing personal details, the psychotherapist-patient privilege is expansive and provides greater protection to the patient than other privileges, such as the physician-patient privilege. (*Nielsen v. Superior Court* (1997) 55 Cal.App.4th 1150, 1153-1154; Senate Com. on Judiciary com., 29B Pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1014, p. 18; see also *People v. Webb* (1993) 6 Cal.4th 494, 518 [there is a "strong policy of protecting a patient's treatment history"].) For the same reasons, the privilege is liberally construed in favor of protecting the patient's confidential communications. (*In re Lifschutz* (1970) 2 Cal.3d 415, 437 (*Lifschutz*).)

Evidence Code section 1010 defines a psychotherapist to include anyone who is, or whom a patient reasonably believes to be, a licensed clinical social worker or a licensed marriage and family therapist. Evidence Code section 1011 defines a patient to include a person who consults a psychotherapist for the purpose of treatment of a mental or emotional condition. The privilege applies in a group setting—or "conjoint therapy" such as marital, family, or group therapy—where communications with other participants in the therapy are reasonably necessary for the accomplishment of the purpose of the therapy. (*Farrell L. v. Superior Court* (1988) 203 Cal.App.3d 521, 527; see also

16

*Grosslight v. Superior Court* (1977) 72 Cal.App.3d 502, 506 [communications between parent and hospital made to assist in the diagnosis and treatment of the minor did not waive privilege].)

Dr. Davidoff is a licensed marriage and family therapist and thus meets the definition of psychotherapist under Evidence Code section 1010. In 2011, Judge Huguenor appointed Pele,[5] the prior conjoint therapist whose role Dr. Davidoff later assumed, at least in part, as a therapist for the purpose of treating Mother, the children and, to the extent Pele thought necessary, Father. In making this order, the court adopted the FCS recommendations that specified Mother and the children were to participate in "conjoint counseling" with a licensed mental health professional and listed specific areas to be addressed in counseling. The specified areas included sexual abuse, trauma, and coping skills, exactly the types of issues a therapist would focus on during a therapeutic session as opposed to a purely information gathering session.

The recommendations the court adopted a year later also specified Mother and the children were to participate in "conjoint counseling" with a licensed professional. While the order placed the determination of when to commence conjoint therapy on the then current therapist, Pele, it also appointed Pele to act as a psychotherapist with respect to any therapy that did occur. Similarly, in 2014, Judge Parker issued an order appointing Dr. Davidoff as the new "conjoint therapist." Although the order left the determination of when to commence conjoint therapy between Mother and the children to Dr. Davidoff, he

---

5      Pele, whom Dr. Davidoff replaced, is a licensed social worker and thus met the definition of a psychotherapist under Evidence Code section 1010 as well.

was to prepare the parties for conjoint sessions and conduct those sessions when appropriate.6  The court underscored his role as a conjoint therapist when it orally instructed the parties to comply with the court's standing orders and continue conjoint therapy with Dr. Davidoff.  Thus, Dr. Davidoff was a psychotherapist engaged in treatment and the psychotherapist-patient privilege applied to his communications with the children, Mother, and Father during therapeutic sessions.

Although it is apparent Judge Parker's order required Dr. Davidoff to recommend to the court when supervised visitation or conjoint therapy should commence, his role as a "recommender" does not destroy the psychotherapist-patient privilege with respect to his role as a therapist.  Evidence Code section 1017, subdivision (a) states "[t]here is no privilege . . . if the psychotherapist is appointed by order of a court to examine the patient."  However, this is a limited exception, typically employed in criminal cases. (See, e.g., *In re Eduardo A.* (1989) 209 Cal.App.3d 1038, 1042 (*Eduardo A.*) [explaining the limited nature of the exception]; *People v. Lines* (1975) 13 Cal.3d 500, 511-512 [discussing the exception in the context of a criminal defendant pleading not guilty by reason of insanity].)  As courts have noted in juvenile dependency cases, matters more analogous to the present case than criminal cases, court-ordered counseling to assist in understanding and addressing, for example, a past molestation, is quite different from the

---

6     The 2014 order also specifies that Dr. Davidoff was to determine when to commence supervised visitation.  The record on appeal does not include the transcript of the hearing associated with this order and it is not clear whether the court intended the determinations regarding conjoint therapy and supervised visitation to be separate or whether the court was using the terms interchangeably.  Regardless, the prior orders and the use of the term "conjoint therapist" throughout the 2014 order indicate that the court appointed Dr. Davidoff, at least in part, as a psychotherapist.

18

information gathering function addressed by Evidence Code section 1017. (*Eduardo A.*, at pp. 1041-1042.)

Where, as here, a court-appointed therapist serves dual purposes—gathering information to make recommendations to the court regarding the child's welfare going forward and conducting therapeutic treatment—Evidence Code section 1017 does not apply and communications during therapeutic sessions remain privileged. (*Eduardo A., supra*, 209 Cal.App.3d at pp. 1041-1042; *In re Mark L.* (2001) 94 Cal.App.4th 573, 584 (*Mark L.*); *Cole C., supra*, 174 Cal.App.4th at p. 912; *People v. Gonzalez* (2013) 56 Cal.4th 353, 375-376 (*Gonzalez*).) In such situations, the therapist may provide limited information to allow the court to make reasoned decisions regarding the welfare of the child so long as the therapist does not disclose the details of the therapeutic sessions. (*Gonzalez*, at pp. 375-376, 379, fn. 10.) Accordingly, Dr. Davidoff could provide limited information in connection with his recommendations to the court but was, and still is, subject to the psychotherapist-patient privilege with respect to the details of his therapeutic sessions with Mother, Father, and the children.

2. *Father Waived the Privilege in a Limited Manner*

Although the court erred in concluding the privilege was inapplicable, we agree that Father waived the privilege, in a limited manner, with respect to communications concerning Dr. Davidoff's conduct during the conjoint sessions with Mother and the children's purported distress resulting therefrom.

In a custody dispute between parents, the child, or the holder of the privilege on behalf of the child, may claim, or waive, the psychotherapist-patient privilege. (*Simek,*

19

*supra*, 117 Cal.App.3d at pp. 173-174.) A patient, or the holder of the privilege on behalf of the patient, waives the privilege by disclosing a significant part of the confidential communication to a third party without coercion. (Evid. Code, § 912, subd. (a); *Lifschutz, supra*, 2 Cal.3d at p. 430; *Inabnit v. Berkson* (1988) 199 Cal.App.3d 1230, 1238.) A patient, or the holder of the privilege on behalf of the patient, also waives the privilege by tendering a mental condition of the patient as an issue in a proceeding. (Evid. Code, § 1016; *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 340 (*Roberts*); *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092 (*San Diego Trolley*).) Here, it is undisputed Father, who had sole legal custody of the children, was the holder of the privilege on their behalf and could either assert the privilege or waive it. (Evid. Code, § 1013; Fam. Code, § 3006.) By disclosing a significant portion of the privileged communications and tendering the mental state of the children, Father waived the privilege in a limited manner.

Father sent an e-mail to Dr. Davidoff, and copied Mother's attorney, a third party. In that e-mail, he disclosed significant portions of the privileged communications with respect to a number of therapy sessions, including most notably the second and third conjoint therapy sessions. Father argues the e-mail could not have contained confidential communications because he was not included in the sessions but, as Father admits, he sent the e-mail on behalf of the children and discussed communications during sessions the children had purportedly disclosed to him. Father also asserts there was no waiver because he sent the e-mail to Dr. Davidoff on behalf of the children, all of whom were subject to the privilege. This argument fails to account for the fact that he copied

20

Mother's attorney, a third party having no direct relationship to the children or their treatment. (Evid. Code, § 912, subd. (a); *Lifschutz, supra*, 2 Cal.3d at p. 430 [privilege waived by disclosure during deposition]; *In re Clergy Cases I* (2010) 188 Cal.App.4th 1224, 1241 [privilege waived by disclosure to third party not reasonably necessary for the purpose of diagnosis or treatment].)

Moreover, in support of his request for orders, Father filed a declaration making various allegations regarding the conduct of therapy to date, the reaction of the children to that conduct, and the children's purported desire not to undergo further therapy with Dr. Davidoff as a result. As such, Father also tendered, on behalf of the children, their mental condition with respect to continued therapy with Dr. Davidoff and the court properly permitted Dr. Davidoff to respond to the allegations under a limited waiver. (Evid. Code, § 1016; *Roberts, supra*, 9 Cal.3d at p. 340; *San Diego Trolley, supra*, 87 Cal.App.4th at p. 1093.)

Relying on the cases addressing therapist serving a dual purpose as a recommender and therapist, Father asserts the court could permit the disclosure of limited information " 'reasonably necessary for . . . the accomplishment of the purpose for which the psychotherapist is consulted' " pursuant to Evidence Code section 1012. (See *Cole C., supra*, 74 Cal.App.4th at p. 912; *Mark L., supra*, 94 Cal.App.4th at pp. 583-584; *In re Kristine W.* (2001) 94 Cal.App.4th 521, 527.) However, the California Supreme Court recently clarified that, although a psychotherapist serving a dual purpose may provide very limited circumscribed information to the court regarding the progress of the patient, Evidence Code section 1012 does not destroy the privilege or permit broad disclosures.

21

(*Gonzalez, supra*, 56 Cal.4th at pp. 375-376.) Thus, in his dual role, Dr. Davidoff could provide circumspect information regarding the progress of therapy and recommendations regarding custody and visitation without a waiver, but the details of his therapeutic sessions with the children, Mother, and Father remained subject to the privilege, and Father's disclosures and tender resulted in a limited waiver of that privilege.

The scope of the waiver, however, is limited; it does not destroy the privilege with respect to all communications between the children, Mother, Father, and Dr. Davidoff. A patient is not required to sacrifice all privacy in order to seek redress for a specific injury or mental condition and, as such, the scope of this type of waiver extends only to the mental condition in question. (*Britt v. Superior Court* (1978) 20 Cal.3d 844, 849, 863-864; see also *San Diego Trolley, supra*, 87 Cal.App.4th at p. 1092; *Lifschutz, supra*, 2 Cal.3d at p. 435.) Stated another way, privileged communications not directly relevant to the specific mental condition at issue remain privileged, even if they may otherwise be relevant to the litigation. (*Britt*, at pp. 863-864.)

Typically, as the patient is the one putting the specific mental condition at issue, "the burden rests upon the patient initially to submit some showing that a given confidential communication is not directly related to the issue he has tendered to the court." (*Lifschutz, supra*, 2 Cal.3d at p. 436.) Here, because the court concluded there was no privilege in the first instance, Father, on behalf of the children, has not yet had a full opportunity to address the scope of the mental condition put at issue. If any party asserts the waiver in further proceedings in this matter, the court should permit Father— or whoever holds the privilege at the relevant time—to address the appropriate scope of

22

the waiver.[7] We note as well the trial court may utilize additional protective measures at its disposal, such as a protective order, in future proceedings to avoid unwarranted disclosures outside of the relevant proceedings of any particularly personal communications. (*Lifschutz*, at pp. 431, 437.) Such protections may be particularly necessary where, as here, a parent waived the privilege on behalf of minor children.

### B. *The Court Did Not Err in Refusing to Remove Dr. Davidoff*

The trial court's primary concern in fashioning custody and visitation orders is the child's best interests and the test on appeal is whether any rational trier of fact could conclude the order advances the child's best interests. (*Burgess, supra*, 13 Cal.4th at p. 32; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The moving party has the burden of proving the trial court's determination was not in the child's best interests and was thus an abuse of discretion. (*Frizzell v. Frizzell* (1958) 158 Cal.App.2d 652, 655.)

Here, the court expressed concern at the lack of progress in therapeutic reunification between Mother and the children, and found Father had consistently impeded the conjoint therapy. The court found Father presented insufficient evidence of the need to remove Dr. Davidoff and ultimately concluded, given the long history of slow progress, removing Dr. Davidoff would not be in the best interests of the children. The court's findings support that conclusion and the court did not abuse its discretion in refusing Father's request to remove Dr. Davidoff.

---

7    Similarly, if raised by any party in future proceedings, the court should permit the holder of the privilege at the time to address the extent to which, if at all, allegations of sexual abuse were included in the waiver.

23

Father's claims the court abused its discretion lack merit. First, Father argues Dr. Davidoff violated his duty to maintain the children's privacy but, as discussed, *ante*, Father waived the privilege on behalf of the children.[8] Second, Father argues Dr. Davidoff violated Family Code section 216, which precludes ex parte communications between counsel for any party and a court-appointed evaluator or mediator absent a stipulation by the parties to the contrary, because he spoke with Mother's attorney without Father or his counsel present. California Rules of Court, rule 5.235 defines a mediator or evaluator in this context as "a superior court employee or a person under contract with a superior court who conducts child custody evaluations or mediations" and there is no indication Dr. Davidoff, despite his role as a "recommender," falls under this definition. Third, Father argues Dr. Davidoff improperly provided confidential documents to Mother and her attorney without consent, but Father does not identify what confidential documents he is referring to or provide any evidence supporting his claims. Father refers to Dr. Davidoff's discussion of Hahn's therapy notes, but the court had previously ordered the parties provide Dr. Davidoff releases with respect to Hahn's therapy with the children, the record does not indicate how Dr. Davidoff obtained the notes, and Hahn testified that the legal department had produced some of her records.

Finally, we note Dr. Davidoff's declaration was before the court when it denied Father's request to remove Dr. Davidoff. Although Father did not have the opportunity to

---

[8]    To the extent Father now seeks to rely on purported HIPAA violations in support of this argument, he did not raise any such allegations before the trial court and we decline to consider them now. (See *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 [reviewing court need not consider arguments not advanced in the trial court].)

24

argue the declaration went beyond the scope of the limited waiver, the court's determination not to remove Dr. Davidoff does not rest on the information or statements in Dr. Davidoff's declaration, but instead on Father's failure to put forth sufficient affirmative evidence establishing bias or any other reason requiring his removal.

C. *The Court Properly Sustained Objections During Hahn's Testimony*

Father also contends the court erred by unduly restricting Hahn's ability to testify, insofar as the court sustained various relevance objections and a narrative objection. However, Father waived these arguments by failing to raise them at the time and, regardless of the waiver, the court acted within the bounds of reason in sustaining the objections and permitted Hahn to provide at least some of the testimony in response to additional questions in any event.

Father asserts the court erred in sustaining various relevance objections to questions eliciting testimony about the children's reactions to therapy with Dr. Davidoff and Dr. Davidoff's access to Hahn's therapy records. In each instance Father identifies, he failed to explain the relevance of the question and the information sought to the trial court and therefore waived the issue. (Evid. Code, § 354, subd. (c); *People v. Coleman* (1970) 8 Cal.App.3d 722, 729, 731.)

Additionally, even if Father had not waived the issue, we would not conclude the court exceeded the bounds of reason by determining the information was not relevant. With respect to the children's reactions to therapy with Dr. Davidoff, Father had already submitted a declaration asserting the children were upset and did not want to return to therapy and the issue before the court was not whether they wanted to continue, but rather

25

whether doing so was in their best interests. Moreover, the court did permit Hahn to testify the younger child was upset after the conjoint session with his maternal grandmother. With respect to Hahn's testimony regarding Dr. Davidoff's ability to access her records, any such testimony would not have been relevant as it would not have established how he actually obtained the notes, nor did Father make any offer of proof in that regard.

Father also asserts the court erred by sustaining a narrative objection to Hahn's testimony regarding whether there was reason to replace Dr. Davidoff. Father does not assert the response was not narrative, but instead argues the objection was in error based on Evidence Code sections 700 and 800, which deal with proper testimony regarding personal knowledge and lay opinions. In sustaining the narrative objection, the court did not preclude Hahn from offering the testimony, albeit in an alternative form. Father could have asked additional questions eliciting such testimony but opted not to do so.

We therefore conclude the court did not abuse its discretion in sustaining the various objections asserted during Hahn's testimony.

D. *The Court Did Not Err in Awarding Sanctions*

Father argues the court erred in granting Mother's request for sanctions under Family Code section 271. Family Code section 271 permits an award of attorney fees and costs as a sanction where the conduct of a party frustrates the policy of the law to reduce the cost of litigation by encouraging cooperation between the parties, among other reasons. The court has broad discretion to award sanctions and the reviewing court will overturn the order only if "considering all of the evidence viewed most favorably in its

26

support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177.) However, the court must consider whether the award constitutes an unreasonable financial burden. (*Robert J., supra*, 171 Cal.App.4th at p. 1520.)

Mother asked the court to order Father to reimburse legal fees and costs in excess of $50,000, which she argued she incurred as a result of Father's refusal to abide by the court's orders, or to communicate with her or her counsel. The court awarded sanctions in the amount of $8,000 pursuant to Family Code section 271, payable in monthly installments of $100. The court explained sanctions were appropriate because Father failed to communicate with Dr. Davidoff and completely and continually failed to cooperate with Mother, her counsel, and the various therapists with regard to the court-ordered conjoint therapy process in general. We conclude the court did not abuse its discretion in awarding sanctions based on its factual findings regarding Father's conduct.

Father's arguments to the contrary are unavailing. Father claims he was torn between following the court-ordered conjoint therapy or respecting the wishes of the children and their individual therapist, but the record indicates Father's lack of cooperation started long before the therapy session he claims upset the children. Further, Father could have filed his own request for an order removing Dr. Davidoff but, instead, refused to follow the court's previous orders, leaving Mother with the choice to either forego the court-ordered conjoint therapy with her children or file her request for an order compelling Father to follow the court's orders. Father also claims the sanctions award was improper because the court did not address his ability to pay when making the award,

but the award is far less than the total amount Mother originally sought and the court ordered Father pay in monthly installments of the exact amount his counsel requested upon the court's inquiry.

## DISPOSITION

We remand with instructions to the court to vacate its order finding that there is no psychotherapist-patient privilege between Dr. Davidoff and the children and to enter a new order finding that there is a psychotherapist-patient privilege but that Father, as holder of the privilege, waived the privilege in a limited manner with respect to communications concerning Dr. Davidoff's conduct during conjoint sessions with Mother

and the children's purported distress resulting therefrom.  We affirm the remaining orders.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.