Filed 12/21/22; Certified for Publication 1/4/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| SHANNON McGOVERN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>BHC FREMONT HOSPITAL, INC.,<br><br>     Defendant and Respondent. | A161051<br>A161052<br><br>(Alameda County Super. Ct.<br>No. RG-17846273) |

On November 7, 2015—while hospitalized at BHC Fremont Hospital, Inc. (variously, Fremont Hospital or the hospital)—appellant Shannon McGovern was assaulted by another patient and sustained injuries. On March 9, 2016, counsel for McGovern sent a letter to Fremont Hospital (the March 9 letter) which described the incident and included a request that the hospital preserve evidence. The letter concluded by stating that counsel would be "gathering more necessary information" and would present it to the hospital's insurance carrier with a pre-litigation demand. It requested that the hospital place its carrier on notice. Thereafter, on October 27, 2016,

1

McGovern's counsel sent Fremont Hospital a "Notice of Intent to Commence Action For Medical Negligence Pursuant to Code of Civil Procedure §364."[1]

McGovern filed suit on January 20, 2017. The trial court subsequently granted Fremont Hospital's motion for summary adjudication on three of McGovern's four causes of action against the hospital, finding that the March 9 letter constituted a section 364 notice and therefore the complaint was not timely filed with respect to these professional negligence claims. Later, the trial court also granted a motion for summary judgment on McGovern's remaining cause of action for elder abuse. The court held that McGovern failed to produce evidence to create a triable issue of fact as to whether the hospital engaged in neglect as defined in Welfare & Institutions Code section 15610.57 with recklessness, oppression, fraud, or malice, or that any officer, director, or managing agent of the hospital authorized or ratified the neglect sufficient to give rise to enhanced remedies under Welfare & Institutions Code section 15657.

In these consolidated appeals, McGovern makes four claims of error. Specifically, McGovern contends that the trial court erred in granting summary adjudication; in granting summary judgment; in granting a motion to quash a subpoena for mental health records of the assailant; and in denying her request to continue the motion for summary judgment so that

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified. Section 364 requires that a plaintiff give a health care provider 90 days' prior notice before commencing an action for professional negligence. (§ 364, subd. (a).); see *Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 305 (*Jones*).) "Section 364, subdivision (d) tolls the statute of limitations for 90 days if the notice of intent to sue is served on the health care provider within the last 90 days of the applicable statute of limitations." (*Kumari v. The Hospital Committee for the Livermore-Pleasanton Areas* (2017) 13 Cal.App.5th 306, 312 (*Kumari*), citing *Woods v. Young* (1991) 53 Cal.3d 315, 325 (*Woods*).)

2

she could conduct the further discovery necessary to oppose the motion.  We agree with McGovern that the trial courts' orders granting summary adjudication and granting Fremont Hospital's motion to quash must be reversed.  Accordingly, we also reverse the trial court's grant of summary judgment.  Under the circumstances, we do not reach the issue of whether the denial of her motion to continue the summary judgment motion was error.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

Fremont Hospital is an acute psychiatric hospital licensed by the California Department of Public Health.  On November 4, 2015, McGovern was admitted to Fremont Hospital under section 5150 of the Welfare and Institutions Code, as a danger to others and gravely disabled.  On November 7, 2015, McGovern and other residents of the facility were engaged in a session of basketball when she was suddenly slammed down to the floor by another resident, J.W.  Before the attack, J.W. had paced and stared at her.  As a result of the attack, McGovern suffered injury to her head and shoulder.  McGovern was subsequently transported to Washington Hospital for medical treatment.  She returned to Fremont Hospital the same evening.  McGovern was discharged from Fremont Hospital on November 13, 2015.

The March 9 letter, which McGovern's counsel sent to Fremont Hospital, described the assault of  McGovern by another resident and the injuries McGovern sustained as a result of the incident.  It requested that the hospital preserve all videotapes and/or photographs, retain all incident reports and witness statements, and forward a copy of the incident report to McGovern's attorney.  The March 9 letter also discussed the legal consequences of failing to preserve evidence at length.  It concluded with the

3

statement that counsel would "be gathering more necessary information and [would] present your insurance carrier with a pre-litigation demand." It continued: "In attempting to resolve this matter short of litigation, we request that you put your carrier on notice and have them contact us." The letter attached a "Designation of Attorney" which stated that McGovern had hired the law firm to represent her in her claim arising out of the November 7 incident. On October 27, 2016, McGovern's counsel sent Fremont Hospital a letter labelled "Notice of Intent to Commence Action for Medical Negligence Pursuant to Code of Civil Procedure §364" (the October 27 letter). (Some capitalization omitted.) The October 27 letter set forth with specificity McGovern's injuries, including a "clavicle fracture, two (2) broken ribs, skull laceration (requiring seven (7) stitches), and traumatic brain injury." McGovern subsequently filed suit on January 20, 2017.

After suit was filed, McGovern sought to obtain records from Fremont Hospital regarding J.W. and another patient. The hospital filed a motion to quash, which the trial court granted. But, at the hearing on the matter, the court also granted McGovern's oral motion for an in camera review of the records. The hospital then filed a motion for reconsideration, which the trial court denied. However, on its own motion, the court vacated the pending in camera review hearing, reconsidered the issue, denied the motion for in camera review, and granted the motion to quash.

In July 2018, Fremont Hospital filed a motion for summary adjudication of McGovern's three professional liability causes of action against the hospital as contained in her then-operative second amended complaint. The challenged causes of action alleged general negligence, negligent supervision, and medical malpractice. Specifically, the hospital asserted that the March 9 letter constituted a section 364 notice and thus the

4

October 27 letter did not extend the statute of limitations to file the action, which was therefore untimely.[2] The trial court agreed and granted the motion in September 2018. In February 2020, the hospital moved for summary judgment of the remaining cause of action against it for dependent elder abuse. The motion was granted in July 2020, and McGovern timely appealed from both the order granting summary adjudication (A161052) and the order granting summary judgment (A161051). On May 24, 2021, we granted McGovern's unopposed motion to consolidate the two appeals for purposes of briefing, argument, and decision.

## II.
### DISCUSSION

### A.    *The Motion for Summary Adjudication*

McGovern contends the trial court erred when it found that, as a matter of law, the March 9 letter was a notice of intent to sue under section 364. We agree, concluding as a matter of law that the March 9 letter did *not* constitute a section 364 notice. Thus, the trial court erroneously granted

---

[2] McGovern's challenge to the admission of the March 9 letter in these proceedings based on lack of authentication is not well taken. McGovern attached the March 9 letter to her opposition papers via her attorney's declaration stating it is a "true and correct copy" of the correspondence at issue. As the trial court pointed out in rejecting the same argument, McGovern cannot both object to the letter's use and then attach it as evidence in support of her opposition. (See Evid. Code, § 1414 [a writing may be authenticated by evidence that "[t]he party against whom it is offered has at any time admitted its authenticity"]; see also *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 326.) The trial court thus did not err in admitting the March 9 letter. We decline to reach McGovern's evidentiary objections with respect to certain other documents—correspondence between McGovern's attorney and the hospital's insurance carrier in response to the March 9 letter—as they are irrelevant to the resolution of this appeal.

5

summary adjudication of McGovern's professional negligence causes of action against Fremont Hospital on this basis.

### 1. *Legal Framework*

An order granting a motion for summary adjudication, like a summary judgment order, is reviewed de novo. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972; *Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1385; see also 437c, subd. (f)(2) ["A motion for summary adjudication . . . shall proceed in all procedural respects as a motion for summary judgment."].)  Thus, " 'after examining the facts before the trial judge on a summary [adjudication] motion, we independently determine their effect as a matter of law.' " (*Monticello Ins. Co.*, at p. 1385.)  Moreover, on review, we strictly construe the moving papers and liberally construe the opposing papers.  The moving papers are viewed in the light most favorable to appellant and all doubts about the propriety of granting the motion are resolved in favor of its denial. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)  Pursuant to the great weight of authority, evidentiary rulings made in connection with a summary adjudication motion are reviewed for abuse of discretion, except for evidentiary rulings that turn on questions of law, which are reviewed de novo. (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226; but see *In re Automobile Antitrust Cases* (2016) 1 Cal.App.5th 127, 141 [describing the issue as unsettled].)

Section 340.5 requires medical negligence actions be brought within the earlier of three years from the date of injury or "one year after the plaintiff discovers . . . the injury, whichever occurs first."  Here, there is no dispute the statute of limitations is one year from the date of McGovern's November 7,

6

2015 injury. There is also no dispute that McGovern's causes of action for general negligence, negligent supervision, and medical malpractice are governed by section 340.5.

Section 364 precludes a plaintiff from filing a professional negligence action against a health care provider unless the plaintiff has given the health care provider 90 days' notice "of the intention to commence the action." (§ 364, subd. (a); *Preferred Risk Mutual Ins. Co. v. Reiswig* (1999) 21 Cal.4th 208, 211.) "No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered." (§ 364, subd. (b).) Section 364, subdivision (d) tolls the statute of limitations for 90 days if the notice of intent to sue is served on the health care provider within the last 90 days of the applicable statute of limitations. (*Woods*, *supra*, 53 Cal.3d at p. 320; see also *Anson v. County of Merced* (1988) 202 Cal.App.3d 1195, 1204 (*Anson*).) "The purpose of section 364 and the 90-day waiting period 'is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate "outside the structure and atmosphere of the formal litigation process' " (*Kumari*, *supra*, 13 Cal.App.5th at p. 312.)

### 2.    *The March 9 Letter Is Not a Section 364 Notice*

The hospital asserts, and the trial court agreed, that McGovern's March 9 letter constituted a section 364 notice. McGovern contends the March 9 letter was an investigatory letter and request to preserve evidence and that she gave notice of intent to commence an action against the hospital in the October 27 letter. Thus, as the trial court correctly observed, "[w]hat is at issue is whether [p]laintiff provided notice under Code of Civil Procedure

7

section 364 on March 9, 2016 or on October 27, 2016." On this point, we find McGovern's position the more persuasive.

First, and crucially, the March 9 letter does not state, nor even imply, that McGovern was giving "notice of the intention to commence [an] action." (§ 364.) The first paragraph of the letter states that the law firm had been retained by McGovern in connection with injuries sustained on November 7, 2015 at Fremont Hospital when she was assaulted by another resident, causing "injuries to her head, and back, including a broken clavicle." The next paragraph states that, "[i]n anticipation of potential litigation," McGovern requests the hospital preserve evidence, and that "we are informed and believe" that McGovern was assaulted due to the negligence of employees of Fremont Hospital including the failure to follow its own policies and procedures. The letter goes on to request that the hospital retain all incident reports and witness statements. Three additional paragraphs elaborate upon the hospital's obligation to preserve evidence.

The final paragraph of the March 9 letter again cites to possible consequences for failing to preserve evidence, stating that such a failure "will lead to sanctions and/or an adverse inference jury instruction." The paragraph concludes: "This office will be gathering more necessary information and will present your insurance carrier with a pre-litigation demand. In attempting to resolve this matter short of litigation, we request that you put your carrier on notice and have them contact us."

A plain reading of the March 9 letter reveals that the bulk of it was directed towards McGovern's request to preserve evidence. Five of the six paragraphs of the letter refer to preservation of evidence and potential consequences to the hospital for failure to do so. The clear import of the remainder of the final paragraph is that McGovern was still in the process of

gathering facts and intended to present a pre-litigation demand in hopes of *avoiding* litigation. Nothing in that statement constitutes a notice of intention to commence an action. (Compare *Kumari*, *supra*, 13 Cal.App.5th at p. 314 [letter evinces specific intent to sue where it demanded $240,000 within 20 days, and stated: " 'I personally do not wish to go through the legal route, but if this doesn't work I *will move to the court* after 20 days,' " italics added by *Kumari*; *Edwards v. Superior Court* (2001) 93 Cal.App.4th 172, 175 (*Edwards*) [section 364 notice "informed [the] defendant that [the] plaintiff 'intends to file suit against you for damages resulting from medical negligence which resulted when [plaintiff] consulted you for plastic surgery and contracted e coli in her breast as a result' "].)[3]

Moreover, the March 9 letter also fails to comport with section 364's requirement that the notice set forth "the type of loss sustained, including with specificity the nature of the injuries suffered." (§ 364, subd. (b).) The letter contains only a vague statement that McGovern "sustained injuries to her head, and back, including a broken clavicle," and that her injuries were

---

[3] Fremont Hospital's suggestion to the contrary notwithstanding, reference to the one-sentence designation of attorney attached to the March 9 letter does not change our analysis. The designation states in full: "I, Shannon McGovern, hire The Dolan Law Firm ('Dolan') to represent me in my claim for damages in the Courts of the State of California against the parties responsible for the injuries arising out of an incident that occurred on or about November 7th, 2015, in California ('my case')." Given the lack of any evidence of an intention to commence an action in the body of the letter, we view this as a simple notification that Dolan was authorized to act on McGovern's behalf with respect to the November 2015 incident, including in any possible litigation. Even the hospital describes the designation merely as evidence "of the serious *threat* of imminent suit." (Italics added.) But a threat of potential litigation is not sufficient to give notice of an intention to actually commence an action.

"serious."[4] While a broken clavicle goes so far, it does not inform on the treatment, sequelae, or residual injury. The reference to "injuries to her head, and back" is a generalized indication of the area of the body injured which could range in seriousness. Further, McGovern's letter says nothing about whether the type of losses sustained were economic, non-economic or otherwise. And it does not monetize her losses in any way. Such generalized wording simply does not suffice to meet the "specificity" required by section 364. (Compare *Kumari, supra*, 13 Cal.App.5th at p. 309 [section 364 letter described the " 'elaborate sequence of events' " leading to her right shoulder fracture and "explained that the pain caused by the accident prevented her from working, bonding with her baby, and caring for herself"; letter also "described the medical treatment she was receiving from an orthopedist and physiotherapist"; and it stated that "she sought 'compensation of 140,000 dollars + non-economic damages of $100,000 + the medical expenses' "]; *Edwards, supra*, 93 Cal.App.4th at p. 175 [section 364 notice provided that she "contracted e coli in her breast as a result of [the] surgery [the plastic surgeon] performed" and that, due to the doctor's failure to diagnose and treat the e coli, she "experienced infection in her breast resulting in the need for additional surgery"]; *Bennett v. Shahhal* (1999) 75 Cal.App.4th 384, 391 (*Bennett*) [operative section 364 notice stated a specific doctor's "negligence

_____

[4] McGovern contrasts the March 9 letter with her October 27 letter, pointing out a more robust description of her injuries including a "clavicle fracture, two [] broken ribs, skull laceration (requiring seven [] stitches), and traumatic brain injury" as a result of the incident. We reject the suggestion that we should engage in a comparison of the two letters in order to ascertain whether the March 9 letter constitutes a 364 notice. The determination must be based upon the content of the March 9 letter and not by a comparison to subsequent correspondence.

'caused the following injuries: surgery to remove a cyst in [the plaintiff's] abdomen as a result of the unsecured shunt" (capitalization omitted)].)

The hospital relies heavily on *Kumari*, *supra*, 13 Cal.App.5th 306, as did the trial court. However, that case is distinguishable as we have noted above. There, Kumari, representing herself, sent a detailed letter to ValleyCare Health System (ValleyCare) regarding her injury when she fell after giving birth, stating the "accident was a result of medical negligence" by a nurse assigned to her. (*Id.* at p. 309.) The letter gave a detailed description of how she was injured, detailed the medical treatment she was receiving, and stated she sought " 'compensation of 140,000 dollars + non-economic damages of $100,000 + the medical expenses' and payment for physical therapy." (*Ibid.*) The letter concluded: " 'I would therefore request you to send me a check of 240,000 dollars within 20 days of receipt of this letter. I personally do not wish to go through the legal route, but if this doesn't work I will *move to the* court after 20 days." (*Ibid.*) Kumari later retained an attorney who, unaware his client had sent such a letter, sent another letter " 'pursuant to . . . section 364,' " stating that the nurse's " 'negligent actions' caused Kumari's injuries and that Kumari's husband had a loss of consortium claim." (*Id.* at pp. 309-310.) After suit was filed, ValleyCare filed a motion for summary judgment on the basis that Kumari's first letter was a section 364 notice, the attorney's second letter did not extend the statute of limitations, and therefore the action was time-barred. Kumari testified in deposition that when she wrote the first letter, her "state of mind was that she would 'go through the legal route' if ValleyCare did not send her a check." (*Id.* at p. 310.)

The trial court granted summary judgment finding her action was not timely filed. Our colleagues in Division Five of this First District affirmed,

11

stressing that "[w]hat the statute requires is that the notice include 'the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.' " (*Kumari, supra*, 13 Cal.App.5th at p. 313.) The appellate court concluded that Kumari's letter included that necessary information. It listed the date of her injury and described the events giving rise to her "medical negligence" claim. It described the injury, the medical treatment she was receiving, and the damages she sustained. It included a demand for $240,000 and stated Kumari would "move to the court after 20 days" if she did not receive payment. (*Ibid.*)

In contrast and as discussed above, McGovern's March 9 letter is largely devoted to preservation of evidence; includes only a generalized reference to injuries; and contains no description of her treatment, the damages sustained, nor any attempt to quantify those damages. It makes no settlement demand and does not state that suit will be filed in a specified period of time if the demand is not met. Instead, the letter states "this office will be gathering more necessary information." Under these circumstances, we conclude as a matter of law that the March 9 letter lacked the requisite elements to establish compliance with section 364 and therefore cannot be deemed a notice of intent pursuant to that statute.

In making this determination, we are cognizant that the well-established purpose of section 364 and the 90-day waiting period "is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process.' " (*Woods, supra*, 53 Cal.3d at p. 320; *Bennett, supra*, 75 Cal.App.4th at p. 391; *Anson, supra*, 202 Cal.App.3d at p. 1203.) Given the wording of the statute, it is likely impossible to fashion a bright line rule in these cases, which is perhaps unsatisfactory for

12

practitioners and trial courts. We are, however, sympathetic to McGovern's concern that lack of clarity could "discourage plaintiffs and their lawyers from making any contact or settlement overtures to the healthcare provider unless and until their investigation of the claim is completed, lest their suit be later barred once they finally decide to proceed with a lawsuit." It should be emphasized that only in those instances when a writing clearly fulfills all of the statutory requirements of section 364 should correspondence be deemed to constitute a notice of intention to commence an action. The March 9 letter fails to meet this standard. Moreover, Fremont Hospital does not argue that the October 27 letter is not a valid section 364 notice which tolled the statute of limitations, nor could it on these facts. Thus, McGovern's three professional negligence causes of action are not time-barred, and the trial court's order granting summary adjudication must be reversed.

## B. The Motion to Quash

As mentioned above, prior to the motion for summary adjudication in this case, Fremont Hospital moved to quash McGovern's subpoena for production of business records related to J.W. and another patient. The trial court initially ordered an in camera review of J.W.'s mental health records pursuant to Welfare and Institutions Code section 5328, subdivision (a)(6), but subsequently reversed itself (after reconsidering the matter on its own motion), concluding that in camera review was not warranted. On appeal, McGovern asserts that the trial court abused its discretion in reversing its prior order and granting the motion to quash because its decision on reconsideration was based on an erroneous understanding of the law. We hold that the ruling on the motion to quash must be reversed to allow for further proceedings.

13

### 1. *Additional Background*

In April 2018, the trial court granted Fremont Hospital's motion to quash McGovern's deposition subpoena for the production of business records related to J.W. and another patient, A.P. McGovern requested "all documents related to [J.W.'s] violent or aggressive behavior towards others." The court cited two reasons for its decision. First—with respect to the mental health records of A.P.—McGovern had failed to provide the necessary consumer notice as mandated by section 1985.3. (See generally *Inabnit v. Berkson* (1988) 199 Cal.App.3d 1230 (*Inabnit*).) Second, noting that the "records sought are subject to strong confidentiality protections and are sensitive, private information, some of which is further protected by privilege," the court concluded that McGovern's request for documents was "too broad" and that she had failed to establish a need for the information which trumped the privacy rights of J.W., A.P., or potential other patients referenced in the documents. Nevertheless, the court went on to grant McGovern's oral motion made at the hearing for an in camera review of J.W.'s medical records pursuant to Welfare and Institutions Code section 5238, subdivision (a)(6).

Fremont Hospital moved for reconsideration, which the trial court denied on grounds that the hospital had offered no new facts and there had been no change in the law to support its request. However, noting that the court had the authority to reconsider its rulings on its own motion, the court stated it would reconsider that portion of its prior ruling related to the in camera review of J.W.'s medical records. The court ordered McGovern to provide notice to J.W. under section 1985.3 and set a briefing schedule.

After argument in July 2018, the court granted its own motion to reconsider and reversed its decision to order J.W.'s medical records produced

14

for in camera review. The court concluded that McGovern had not presented sufficient grounds that disclosure was "necessary to the administration of justice." (Welf. & Inst. Code, § 5328, subd. (a)(6).) Citing *County of Riverside v. Superior Court* (1974) 42 Cal.App.3d 478 (*County of Riverside*) and Evidence Code section 1014, the court further opined: "Even if the Court were to review the records, it would not be able to release the records to [McGovern], nor could they be used as evidence at trial." And the court stated that McGovern had not provided "adequate procedural grounds" for the court to "make a determination of whether, on a motion to quash, . . . the court may order an in camera review to determine whether the records fall under Evidence Code section 1024." The trial court went on to note that it had previously granted the motion to quash on other grounds—the lack of notice to A.P. and the broad nature of the requests—and it affirmed those portions of its prior order.

### 2. *Legal Framework*

Welfare and Institutions Code section 5328, subdivision (a) provides, in relevant part, "[a]ll information and records obtained in the course of providing services under . . . Division 5 (commencing with section 5000), . . . to either voluntary or involuntary recipients of services are confidential." The statute, however, goes on to delineate numerous exceptions pursuant to which otherwise confidential information "shall be disclosed." (*Id.,* § 5328, subd. (a)(1)–(27).) Pursuant to one such exception, confidential information is disclosable "[t]o the courts, as necessary to the administration of justice." (*Id.*, § 5328, subd. (a)(6).) This provision "contemplates use of the information or records 'as necessary to the administration of justice' in some pending judicial action or proceeding." (*County of Riverside*, *supra*, 42 Cal.App.3d at p. 481.) Therefore, "[t]he clear language of Welfare and Institutions Code

15

section 5328, subdivision [(a)(6)] authorizes the disclosure of the evidence . . . unless such evidence is otherwise nondisclosable." (*Mavroudis v. Superior Court* (1980) 102 Cal.App.3d 594, 602 (*Mavroudis*).)

One such barrier to disclosure in this context is the psychotherapist-patient privilege, "which is 'an aspect of the patient's constitutional right to privacy' under article I, section 1 of the California Constitution." (*Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 445 (*Sorenson*).) The privilege is codified in Evidence Code section 1014, which provides that a patient, "whether or not a party" generally "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist." "[F]or policy reasons the psychotherapist-patient privilege is broadly construed in favor of the patient, while exceptions to the privilege are narrowly construed." (*Story v. Superior Court* (2003) 109 Cal.App.4th 1007, 1014 (*Story*), citing *People v. Stritzinger* (1983) 34 Cal.3d 505, 511, 513.)

"[T]he confidentiality provisions of section 5328 operate independently of the psychotherapist-patient privilege. [Citations.] Indeed, section 5328 may afford broader protection than the psychotherapist-patient privilege. For example, the mere fact of the patient's entry into a facility for treatment may be subject to the confidentiality provisions of section 5328, but it may not be protected under Evidence Code section 1014. [Citation.] Likewise, communications between the patient and a non-clinician employee of a hospital that are found in a medical record may be confidential under section 5328 but may not be subject to the psychotherapist-patient privilege." (*Sorenson*, *supra*, 219 Cal.App.4th at p. 446.)

" 'Despite its broad and protective nature, the psychotherapist-patient privilege is not absolute. [Citation.]' Upon a proper showing, the records of

psychotherapy may be disclosed in litigation." (*Fish v. Superior Court* (2019) 42 Cal.App.5th 811, 818 (*Fish*).) Of relevance here, "Evidence Code section 1024—the dangerous patient exception to the psychotherapist-patient privilege—provides in full: " 'There is *no privilege* under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger.' " (*People v. Gonzales* (2013) 56 Cal.4th 353, 378, italics added.) The exception is a statutory recognition that "[t]he 'public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others. The protective privilege ends where the public peril begins.' " (*People v. One Ruger .22-Caliber Pistol* (2000) 84 Cal.App.4th 310, 315 (*22-Caliber Pistol*), quoting *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 442 (*Tarasoff*).)

Moreover, unlike the common law duty to warn articulated in *Tarasoff*, the exception to the psychotherapist-patient privilege set forth in Evidence Code 1024, by its plain terms, does not require danger to a readily identifiable victim. (*In re Kevin F.* (1989) 213 Cal.App.3d 178, 183–184 (*Kevin F.*); see also *22-Caliber Pistol*, *supra*, 84 Cal.App.4th at pp. 312, 314– 315 [in action under Welf. & Inst. Code, § 8102 with respect to forfeiture of weapons, the dangerous person exception applied to allow disclosure of doctor's opinion obtained during treatment pursuant to Welf. & Inst. Code, § 5150 that the patient "should be deprived of firearms 'for his own safety and also for the safety of the public at large' "].) *Kevin F.* is instructive. In that case, the patient disclosed to his counselor at a drug and alcohol treatment program (Our Family) his fascination with fire and previous fire setting. He

17

was suspected of setting a fire in a trash can at the program. (*Kevin F.*, at pp. 182–183.) The counselor informed his probation officer "of his dangerous propensities as a necessary consideration in determining his next placement in a more restrictive institutional setting." (*Id.* at p. 183.) The appellate court concluded the disclosure was permissible under Evidence Code section 1024: "There was substantial evidence before the trial court that [the counselor] had reasonable cause to believe [the patient's] mental and emotional condition rendered him dangerous to the residents and property of Our Family and that this condition required disclosure of his confession to avert future threatened danger upon his transfer to a more secure facility." (*Kevin F.,* at p. 183.) Accordingly, the trial court did not abuse its discretion in concluding the patient's confession to his counselor was not privileged. (*Id.* at p. 183–184 ["[t]he residents of Our Family and the institution to which [the patient] might be transferred were persons within the contemplation of [Evidence Code] section 1024 potentially threatened by [his] mental and emotional condition"].)

In addition, although the exception speaks in terms of "threatened danger," communications between therapist and patient are no longer privileged, and therefore disclosable, even if a potential victim is dead or the threat has passed. In *People v. Wharton* (1991) 53 Cal.3d 522 (*Wharton*), the Supreme Court upheld the use of Evidence Code section 1024 to allow testimony from two doctors regarding the "confidential communications that 'triggered' their decision to warn" an identified victim, even though she was dead. (*Id.* at pp. 554–558.) Our high court reasoned: "[B]ecause the preliminary facts justifying application of [Evidence Code] section 1024 existed prior to the realization of the threatened danger, not only were the therapists free to communicate such statements to the victim, but

18

defendant's statements were not privileged and the trial court correctly ruled that evidence concerning those statements was admissible at trial." (*Wharton*, at p. 558; accord, *San Diego Trolley v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092 (*San Diego Trolley*) ["when the factual predicate of the exception exists, an excepted communication may be used in any further proceeding, even though the threat identified by the psychotherapist no longer exists"], disapproved on other grounds in *Williams v. Superior Court* (2017) 3 Cal.5th 531, 557 & fn. 8 (*Williams*); *Mavroudis*, *supra*, 102 Cal.App.3d at pp. 603–604 ["The exception is applicable if the court finds that, prior to the time of the injury complained of, the therapist determined, or reasonably should have determined, that the therapist's patient presented a serious danger of violence . . . and the disclosure of confidential communications was necessary to prevent the threatened danger."].)

Finally, we note that "the 'dangerous patient' exception requires *only* reasonable cause for belief by the psychotherapist in the dangerousness of the patient and the necessity of disclosure. Certainly, it does not demand . . . that the psychotherapist must actually disclose the relevant communication or even issue a warning." (*Menendez v. Superior Court* (1992) 3 Cal.4th 435, 451 (*Menendez*).) As the Supreme Court held in *Wharton*: "[O]peration of [Evidence Code] section 1024 is not keyed to voluntary disclosure and the concept of waiver as is Evidence Code section 912, which provides for waiver upon an uncoerced disclosure by the holder of the privilege. The fact that the two therapists warned the victim is not the reason why some of defendant's confidential communications were admissible at trial; rather, it was the existence of the specified factual predicate that brings this case within the ambit of [Evidence Code] section 1024." (*Wharton*, *supra*, 53 Cal.3d at pp. 560–561.)

19

However, even if confidential or privileged information is disclosable pursuant to the statutory exceptions discussed above, a claimant still retains his or her constitutional privacy rights. (See *San Diego Trolley*, *supra*, 87 Cal.App.4th at p. 1092.) Thus, "any disclosure of confidential or private information must be . . . accomplished in a manner which protects, insofar as is practical, the patient's privacy." (*Id.* at p. 1093, citing *Palay v. Superior Court* (1993) 18 Cal.App.4th 919, 933–934 (*Palay*), disapproved on other grounds in *Williams, supra*, 3 Cal.5th at p. 557 & fn. 8.) For instance, "[d]iscovery procedures must be utilized that identify and remove documents irrelevant and immaterial to the issue." (*Palay*, at p. 934; see also *id.*, at p. 935 [approving as a "narrowly tailored discovery procedure" the trial court's in camera review of the documents at issue].)[5]

In addition, in a situation where disclosure of otherwise private information is contemplated, the interests on each side must be balanced to determine whether such disclosure should occur. (*Palay*, *supra*, 18 Cal.App.4th at p. 933 ["[a]n 'intrusion upon constitutionally protected areas of privacy requires a "balancing of the juxtaposed rights" ' "].) Recently, in *Mathews v. Becerra* (2019) 8 Cal.5th 756 (*Mathews*), our high court summarized the framework for analyzing constitutional privacy claims: " '[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances;

---

[5] With respect to materials claimed to be privileged, however, Evidence Code section 915, subdivision (a) provides, subject to several exceptions not applicable here, that "the presiding officer may not require disclosure of information claimed to be privileged under this division . . . in order to rule on the claim of privilege." (See also *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 737 (*Costco*).)

20

and (3) conduct by defendant constituting a serious invasion of privacy.[6] [¶] … [¶] A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests.  The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests.' [Citation.]  The standard for evaluating the justification for a privacy invasion depends on 'the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests.' [Citation.]  'Where the case involves an obvious invasion of an interest fundamental to personal autonomy, . . . a "compelling interest" must be present to overcome the vital privacy interest.  If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed.' " (*Id.* at p. 769, quoting *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 (*Hill*).)

A patient has an obvious interest in shielding his or her private mental health records from disclosure, although that interest may vary in seriousness based on the sensitivity and narrowness of the information sought.  (See *Menendez, supra*, 3 Cal.4th at p. 448 ["For example, if the communication is insignificant in content or the disclosure is narrow in scope, the patient's privacy may be implicated only slightly."].)  A litigant also has an interest in proving certain facts, but only to the extent material to his or her litigation claims.  And "[t]he state has enough of an interest in

---

6 "The first threshold element thus examines the basic nature of the privacy interest at a general level, while the second element asks whether an expectation of privacy is reasonable in the particular setting or context at issue." (*Matthews*, *supra*, 8 Cal.5th at p. 770.)

discovering the truth in legal proceedings, that it may compel disclosure of confidential material." (*Palay*, *supra*, 18 Cal.App.4th at p. 933.)

Moreover, as is relevant here, the Legislature found, in enacting California's Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600, et seq.; the Act), "that infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits." (*Id.,* § 15600, subd. (h).) The Act was amended in 1991 "to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (Welf. & Inst. Code, § 15600, subd. (j); *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 779.) At that time, "the Legislature added Welfare and Institutions Code section 15657 to the Act. That section makes available, to plaintiffs who prove especially egregious elder abuse to a high standard, certain remedies 'in addition to all other remedies otherwise provided by law' [citation]. Specifically, a plaintiff who proves 'by clear and convincing evidence' that a defendant is liable for physical abuse, neglect, or financial abuse (as these terms are defined in the Act), and that the defendant has been guilty of 'recklessness, oppression, fraud, or malice' in the commission of such abuse, may recover attorney fees and costs." (*Covenant Care, Inc.*, at p. 779. ) Punitive damages are also available if a plaintiff additionally proves that an officer, director, or managing agent ratified the abuse or neglect. (Welf. & Inst. Code, § 15657, subd. (c); see also Civil Code, § 3294.) Thus, it appears that the Legislature identified a significant interest in allowing reasonable discovery necessary to prove these enhanced damages

claims—i.e., recklessness in the commission of specified abuse and/or ratification by management.

"The standard of review for discovery orders in general is abuse of discretion." (*Kirchmeyer v. Phillips* (2016) 245 Cal.App.4th 1394, 1402.) Thus, we review the trial court's ruling denying in camera review and granting the hospital's motion to quash in this case for abuse of discretion. (See *Lee v. Superior Court* (2009) 177 Cal.App.4th 1108, 1124.) However, " '[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) And "[a]n order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Williams*, *supra*, 3 Cal.5th at p. 540.)

### 3. *The Motion to Quash Must Be Reconsidered*

As stated above, McGovern contends that the trial court's order granting the hospital's motion to quash on reconsideration must be reversed for legal error. Fremont Hospital, in contrast, argues at length that McGovern has not provided a sufficient record for us to review the matter on appeal. Alternatively, the hospital claims that the trial court correctly applied applicable legal authorities and thoughtfully balanced the competing interests in this case. While the record here is sparse, we believe that the trial court's written orders are the best evidence of the court's analysis of the discovery matters here at issue and disclose a misapplication of the law which, we determine, requires reversal of the order granting the motion to quash.

The trial court granted the motion for reconsideration with respect to only that portion of its order granting McGovern's oral motion to have J.W.'s

records produced for in camera review.  The court then reversed its prior order, concluding that McGovern had failed to present sufficient grounds to apply the exception to confidentiality which allows disclosure "[t]o the courts, as necessary to the administration of justice."  (Welf. & Inst. Code, § 5328, subd. (a)(6).)  However, the court went on to state:  "Even if the Court were to review the records, it would not be able to release the records to [McGovern], nor could they be used as evidence at trial."  But, as we discuss below, the records may be shown to be both discoverable and admissible at trial.

The very purpose of the exception to general confidentiality under Welfare and Institutions Code section 5328, subdivision (a)(6) is to allow use of otherwise confidential information and records " 'as necessary to the administration of justice' in some pending judicial action or proceeding." (*County of Riverside*, *supra*, 42 Cal.App.3d at p. 481.)  Of course, care must still be taken to use narrowly tailored discovery procedures to minimize any intrusion into a patient's privacy rights with respect to confidential information—such as in camera review, removal of irrelevant information, protective orders, and/or the redaction of unnecessary identifying information related to third parties.  (See *Palay*, *supra*, 18 Cal.App.4th at pp. 933–934, 935 [approving in camera review of *unprivileged* but confidential medical records to limit disclosure to information "specifically related to a determination of the issues in [the] litigation"].)  In addition, a court must properly balance the seriousness of the prospective invasion of privacy against the interests of the party seeking disclosure.  (*Williams*, *supra*, 3 Cal.5th at p. 557.)  If disclosure is warranted, a court would then consider the least intrusive means to disclose the information.

While it remains to be seen whether any confidential records exist that are disclosable to McGovern under this rubric, there is no blanket prohibition

against *all* disclosure of *any* confidential information. Moreover, while it is true that McGovern faces two hurdles here—obtaining the records appropriately disclosable to her and admitting any such materials at trial (*In re M.L.* (2012) 210 Cal.App.4th 1457, 1467)—there is also no absolute bar to use of properly obtained confidential information at trial.

*County of Riverside*, *supra*, 42 Cal.App.3d 478 cited by the trial court is distinguishable. In that case, the State Board of Chiropractic Examiners (State Board) instituted administrative proceedings to revoke a chiropractor's license due to his chronic alcoholism. (*Id.* at p. 480.) The State Board petitioned the superior court for an order directing a crisis center at which the chiropractor had sought voluntary treatment to submit all of his records to the court for a determination by it whether the records should be disclosed to the State Board for use in the pending administrative proceedings. (*Ibid.*) The records were confidential under Welfare and Institutions Code section 5328. (*Ibid.*)

The appellate court held that the trial court order directing delivery of the records to the State Board was invalid because the case did not fall within any of the specific exceptions set forth in the statute, stating: "[In] section 5328 and succeeding sections the Legislature has specifically provided for disclosure to certain persons or agencies under certain circumstances. Had the Legislature intended to permit disclosure to administrative agencies such as State Board it would doubtless have included a specific authorization for such disclosure." (*Id.* at p. 481.) The court further opined that the plain language of the exception to confidentiality at issue (now subdivision (a)(6)) "says that information and records may be disclosed *to the courts*, not to an administrative agency *through the courts*. In our view, the subdivision contemplates use of the information or records 'as necessary to the

25

administration of justice' in some pending judicial action or proceeding. In the case at bench there is no judicial action or proceeding pending in which the use of information or records is 'necessary to the administration of justice.'" (*Ibid.*) Here, in contrast, there is a pending judicial action in which certain otherwise confidential information may be disclosable as "necessary to the administration of justice." (Welf. & Inst. Code, § 5328, subd. (a)(6).) *County of Riverside* is thus inapposite.

Nor does Evidence Code section 1014 justify the conclusion that J.W.'s mental health records are neither disclosable to McGovern nor admissible at trial. While portions of the mental health records sought by McGovern may constitute "confidential communication between patient and psychotherapist" subject to the psychotherapist-patient privilege codified in Evidence Code section 1014, all records "related to [J.W.'s] violent or aggressive behavior towards others" are not. Confidential but nonprivileged records are disclosable as set forth above.

Moreover, even records covered by the psychotherapist-patient privilege may still be disclosable as discussed above. (See, e.g., *Mavroudis*, *supra*, 102 Cal.App.3d 594, 598, 601–604 [in action for damages by parents against hospitals who treated their son for mental health issues after son attacked parents with a hammer, the hospitals objected to the release of the records under both Welfare and Institutions Code section 5328 and Evidence Code section 1014; the appellate court held that section 5328 authorized disclosure of the records unless the evidence was otherwise nondiscloseable and then went on to analyze the applicability of Evidence Code sections 1014 and 1024].) While Evidence Code section 915 prohibits a trial court from reviewing allegedly privileged documents in camera in order to rule on the claim of privilege, there are a number of other options available for dealing

with documents alleged to fall under the privilege. For instance, a litigant can argue that any privilege has been waived or that a statutory exception to the privilege exists. (See *Fish*, *supra*, 42 Cal.App.5th at p. 818; see also Evid. Code, § 912; *Inabnit*, *supra*, 199 Cal.App.3d at p. 1239.) Mental health records for which the privilege has been waived are treated like all of the other confidential records for purpose of disclosure. (See *Costco*, *supra*, 47 Cal.4th at p. 740 ["section 915 prohibits disclosure of information claimed to be privileged in order to determine if a communication is privileged. But after the court has determined the privilege is waived or an exception applies generally, the court to protect the claimant's privacy may conduct or order an in camera review of the communication at issue to determine if some protection is warranted notwithstanding the waiver or exception."].)

In addition, a trial court may order production in camera any records excepted from the psychotherapist-patient privilege under the dangerous person exception set forth in Evidence 1024. Such records are by definition not privileged. As stated above, that exception applies where "prior to the time of the injury complained of, the therapist determined, or reasonably should have determined, that the therapist's patient presented a serious danger of violence" to the "person or property of another." (Evid. Code, § 1024; *Mavroudis*, *supra*, 102 Cal.App.3d at p. 603.) And, if there is any dispute about the application of the exception to a particular communication, a court can hold an in camera hearing to determine the validity of the claim of privilege at which some information could be revealed, so long as it did not require disclosure of the "very communication claimed to be privileged." (*Costco*, *supra*, 47 Cal.4th at p. 737.)

Although it involved the possibility of an actual warning which is not always required, *San Diego Trolley*, *supra*, 87 Cal.App.4th 1083, is

instructive in the context of this case.  There, a pedestrian injured by a trolley sued the trolley company (Trolley).  (*Id.* at p. 1088.)  After deposing Cooper, the operator of the trolley, the injured pedestrian sought Cooper's employment, psychiatric, and worker's compensation records.  (*Id.* at p. 1089.)  The appellate court concluded that Cooper could prevent the "disclosure of confidential communications with her psychiatrist by any person."  (*Id.* at p. 1096.)  However, it permitted a limited exception under Evidence Code section 1024, noting that "communications which a psychotherapist has reason to believe give rise to a need to warn others are not privileged."  (*San Diego Trolley*, at p. 1096.)  The court reasoned:  "With respect to Trolley's knowledge about Cooper's condition, a warning . . . would be highly probative.  If in fact Trolley received a warning from a psychological professional, it would be persuasive evidence Trolley was fully aware of Cooper's impairment and its potential consequences.  Thus, in light of [injured pedestrian's] need to establish Trolley knew about Cooper's impaired condition, and in the absence of any concession by Trolley that it knew Cooper's abilities were impaired, [the pedestrian] is entitled to disclosure of any warning Trolley received about Cooper.  Such disclosure is plainly permissible under Evidence Code section 1024 and is necessary within the meaning of the Constitution."  (*Id.* at p. 1097.)

Since the trial court erroneously believed that, even if it reviewed the records in camera, information material to the litigation could not be disclosed to McGovern or used at trial, the court's conclusions that disclosure was not necessary for the administration of justice and that J.W.'s privacy concerns trumped McGovern's litigation interests were inevitably flawed.  Thus, the motion to quash must be remanded for further consideration.  We

28

express no opinion as to the proper resolution of the motion to quash on remand.[7]

## III.
### DISPOSITION

The judgment is reversed. On remand, the trial court is directed to vacate the judgment and enter orders denying the motion for summary adjudication, denying the motion for summary judgment, and setting a new hearing to reconsider the motion to quash. McGovern is entitled to her costs on appeal.

---

[7] Our remand relates only to the records of J.W., as McGovern has not argued on appeal that the trial court committed error with respect to A.P.'s records. Given our decision to remand for reconsideration of this discovery issue, we necessarily must also reverse the trial court's grant of summary judgment in this case, as it was based on a lack of evidence regarding the enhanced damages permissible under the Act, evidence McGovern was hoping to establish via the records subpoena. Under the circumstances, we decline to address McGovern's claim that the court should have continued the summary judgment hearing to allow for further discovery as moot.

WISS, J.*

WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A161051, A16105

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SHANNON McGOVERN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BHC FREMONT HOSPITAL, INC.,<br><br>    Defendant and Respondent. | A161051<br>A161052<br><br>(Alameda County<br>Super. Ct. No. RG-17846273)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on December 21, 2022, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:                              _____

                                               Humes, P. J.

Alameda County Superior Court

Hon. Victoria Kolakowski

Counsel:

Dolan Law Firm, Christopher B. Dolan, Jeremy M. Jessup, Kimberly E. Levy for Plaintiff and Appellant.

Porter Scott, Jonathan A. Corr, Jihan El Saouda, Thomas L. Riordan for Defendant and Respondent.